RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DR. JOSEPH CICCIO; DR. VISHU RAJ; DR. ARTHUR
KAPIT; DENA NIGOHOSIAN; DANA JOHNSON,

                          *Plaintiffs-Appellees*,

      *v.*

SMILEDIRECTCLUB, LLC,

                          *Defendant-Appellant*.

> No. 20-5833

─────────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00845—Aleta Arthur Trauger, District Judge.

Argued:  March 11, 2021

Decided and Filed:  June 25, 2021

Before:  CLAY, McKEAGUE, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Michael D. Meuti, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP,
Cleveland, Ohio, for Appellant.  Emily J. Tidmore, SPOTSWOOD SANSOM & SANSBURY
LLC, Birmingham, Alabama, for Appellees.  **ON BRIEF:**  Michael D. Meuti, James R. Bedell,
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant.
Emily J. Tidmore, Robert K. Spotswood, Michael T. Sansbury, Joshua K. Payne, SPOTSWOOD
SANSOM & SANSBURY LLC, Birmingham, Alabama, Edward M. Yarbrough, W. Justin
Adams, BONE MCALLESTER NORTON PLLC, Nashville, Tennessee, for Appellees.

     McKEAGUE, J., delivered the opinion of the court in which MURPHY, J., joined.
CLAY, J. (pp. 15–22), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge. Dana Johnson first brought his claim against SmileDirectClub, LLC (SmileDirect) in court. But, in light of an arbitration agreement, he later voluntarily dismissed his claim and submitted it for arbitration to the American Arbitration Association (AAA). Before the claim got to an arbitrator, an AAA administrator determined that the claim implicated various AAA policies that precluded arbitration unless the parties signed a post-dispute arbitration agreement or a court otherwise ordered arbitration. Johnson declined to sign a new agreement and instead returned to court.

The district court held that Johnson satisfied his obligations under the arbitration agreement. In effect, this meant that the arbitration agreement did not cover the instant dispute. But whether an arbitration agreement covers a dispute is a gateway question of arbitrability, and here the parties delegated such questions to an arbitrator. Under the agreement and the incorporated AAA rules, it was improper for an administrator to effectively answer that gateway question or to overlook it altogether by binding the parties to AAA's views of sound policy.

We reverse and remand to send the question to an arbitrator.

**I**

SmileDirect sells orthodontic implements over the internet as an alternative to traditional orthodontists. The original plaintiffs in this case—Dena Nigohosian, Dr. Joseph Ciccio, Dr. Arthur Kapit, and Dr. Vishu Raj—sued SmileDirect (and related defendants), alleging various federal and state statutory claims as well as some common-law claims. The gravamen of the complaint was false advertising. SmileDirect customer Dana Johnson and others joined as plaintiffs in a later amended complaint. SmileDirect and its customers had an arbitration agreement (the Agreement):

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered [b]y SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not [b]y lawsuit filed in any court,

except claims within the jurisdiction of Small Claims Court . . . . I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

SmileDirect moved to compel Nigohosian to arbitrate and the district court granted the motion in relevant part. Nigohosian argued that her claim fell "within the jurisdiction of Small Claims Court," so her claim was not subject to arbitration. But the court held that the contract-interpretation question was a gateway question of arbitrability and that the parties agreed to arbitrate such gateway questions. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). In light of this court order compelling Nigohosian to arbitrate, Johnson and the other consumer plaintiffs voluntarily dismissed their claims rather than face a similar court order compelling them to arbitrate.

Johnson filed a demand for class-wide arbitration with the American Arbitration Association (AAA). An AAA administrator informed the parties that AAA's Healthcare Due Process Protocol and Healthcare Policy Statement applied, which require healthcare providers and their patients to sign an arbitration agreement after a dispute arises in certain cases unless a court order has compelled arbitration. SmileDirect's counsel asked the AAA administrator to reverse this decision but the AAA administrator maintained his "initial, administrative determination [that] the Protocol [and the Healthcare Policy Statement] appl[y]." R.88-8 P.1689. SmileDirect's counsel objected again, noting that the district court had already compelled Nigohosian to arbitrate "whether the claims themselves are arbitrable" and argued that "AAA's administrative decision to apply the Protocol [and the Healthcare Policy Statement] to these consumer claims is erroneous." R. 88-9 P.1692.

The AAA administrator "reaffirm[ed] [his] administrative determination" that the Healthcare Policy Statement applied to Johnson's claims. R.88-10 P.1698. He concluded that arbitration could only proceed following a court order (seemingly like the court order already entered for Nigohosian) or a post-dispute arbitration agreement.

Johnson declined to sign the post-dispute agreement and Nigohosian never initiated an arbitration. Instead, both parties filed a motion to rejoin this case. SmileDirect responded that they couldn't rejoin the case because the Agreement required an arbitrator to decide the merits of

any dispute, including any gateway issues about whether the dispute was arbitrable. The district court concluded that SmileDirect and Johnson got what they bargained for because the dispute had been "resolved using the rules of the [AAA]."

The court reached this conclusion by interpreting the Agreement itself and several AAA rules and policies. The starting point was the Agreement's mandate that the arbitration "shall be resolved using the rules of the American Arbitration Association." The court continued to Consumer Rule 1(a).

**Consumer Rule 1(a)**

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement. R.89-1 P.1717.

The district court reasoned that Rule 1(a) confirmed that the parties made "a binding commitment to AAA administration" under the Agreement and proceeded to consider the remaining rules and attendant policies.

**Consumer Rule 1(d)**

The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules.* The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol.* Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. R.89-1 P.1718.

**Consumer Due Process Protocol**

In some cases, the AAA is developing or has developed special dispute resolution policies and procedures governing particular transactional systems. A recent example is its current initiative with respect to ADR in contracts for health care services. Where the general principles set forth in this Protocol conflict with more specific standards developed under the auspices of the AAA or some other independent organization with relatively broad participation by affected parties, the latter should govern. R.89-4 P.1780.

**Healthcare Policy Statement[1]**

> In 2003, the American Arbitration Association ("AAA") announced that it would not administer healthcare arbitrations between individual patients and healthcare service providers that relate to medical services, such as negligence and medical malpractice disputes, unless all parties agreed to submit the matter to arbitration after the dispute arose. . . . However, the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration. R.88-11 P.1700.

The district court interpreted the Agreement to fully incorporate Rule 1(d), the Consumer Due Process Protocol, and the Healthcare Policy Statement. The court's interpretation of these rules and policies next led it to conclude that Johnson had discharged his obligations under the Agreement and could "submit [his] dispute to the appropriate court for resolution." R.89-1 P.1718. Under the district court's reasoning, Rule 1(d) incorporates the Consumer Due Process Protocol, which in turn states that AAA has subject-specific policies (incorporating the Healthcare Due Process Protocol and Healthcare Policy Statement by implication), and the Healthcare Policy Statement requires a post-dispute arbitration agreement or a court order. Therefore, the court held that "the AAA process to which the parties mutually agreed ha[d] been completed in Johnson's case."

The court reached a different conclusion for Nigohosian, who had never initiated an arbitration and was subject to a preexisting court order requiring her to do so. AAA's Healthcare Policy Statement indicates that AAA will administer healthcare disputes when "a court order" directs the dispute to arbitration. Nigohosian was subject to such a court order, so the court stayed Nigohosian's claims.

SmileDirect subsequently filed a motion to compel Johnson to arbitrate and the district court denied the motion. In so doing, the district court relied on its prior interpretation of the Agreement.

SmileDirect appeals from the denial of its motion to compel Johnson to arbitrate.

---

[1]The Policy Statement says it is "consistent with" the AAA's Healthcare Due Process Protocol. R.88-11 P.1700.

## II

We review a district court's denial of a motion to compel arbitration de novo. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019). The same is true regarding the arbitrability of a dispute. *Id.*

But here, we don't reach the dispute's arbitrability. On its face, this case is about whether the Agreement incorporates the Healthcare Policy Statement. An AAA administrator decided that this policy statement applied, and so found that SmileDirect's dispute with Johnson was not arbitrable. For its part, the district court interpreted the Agreement de novo to incorporate the policy statement.

But neither the administrator[2] nor the district court should have decided whether Johnson's claims were arbitrable. "[W]hether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" is a gateway question of arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center*, 561 U.S. at 69). By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020). The text of the Agreement confirms that the parties didn't intend to allow an administrator to short-circuit arbitration by refusing to appoint an arbitrator to answer this initial gateway question. Accordingly, we don't have anything further to say on the matter until and unless a party asks us to review an arbitrator's decision under 9 U.S.C. § 10.

We reverse the district court's denial of SmileDirect's motion to compel arbitration and remand with instructions to grant the motion.

## A.

The touchstone of arbitration agreement interpretation is the Federal Arbitration Act (FAA). 9 U.S.C. §§ 1–16. Section 2 of the FAA "embodies the national policy favoring

---

[2]As detailed further below, an AAA administrator's role is to handle things like the appointment of arbitrators, the processing of fees, and setting a location for the arbitration. Arbitrators adjudicate the merits of a dispute and issue a final, binding decision.

arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), so courts must "'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The terms of an agreement demonstrate the parties' intent. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

"Whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" are gateway arbitrability questions. *Rent-A-Center*, 561 U.S. at 69. Usually these questions are "for a court to decide." *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002). But parties may decide to send these gateway questions to an arbitrator rather than a court. *See Henry Schein*, 139 S. Ct. at 529; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). That's called a delegation provision. *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020).

The decision to delegate is important. For example, it drastically changes the nature of our review. If a district court decides the gateway questions, we review that decision de novo. *First Options*, 514 U.S. at 943. But if an arbitrator decides the gateway questions, we "set[] aside his or her decision only in certain narrow circumstances" under 9 U.S.C. § 10, like when an arbitrator exceeded their power or was affected by corruption or fraud. *Id.* at 942–43; *accord Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005).

The Supreme Court requires "clear and unmistakable" evidence that the parties intended to delegate gateway questions to the arbitrator. *Blanton*, 962 F.3d at 844 (quoting *First Options*, 514 U.S. at 944). Under our precedent, there is such evidence here because the parties incorporated the AAA rules into their Agreement. *See id.* at 846. The Agreement states that "the arbitration . . . shall be resolved using the rules of the American Arbitration Association." R.28-1 P.217. And one of those rules indicates that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." R.89-1 P.1725. The incorporation of these rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability questions. *Blanton*, 962 F.3d at 846; *see also McGee*, 941 F.3d

at 866. That's why the district court compelled Nigohosian to arbitrate the gateway question of whether the small-claims clause in the Agreement allowed her to litigate.

Johnson's identical Agreement merits an identical result. The only reason the result should differ would be if Johnson's dispute here were not a gateway arbitrability question. But whether the Agreement incorporates the Healthcare Policy Statement is a gateway question of arbitrability because it's coextensive with "whether the parties have agreed to arbitrate" the underlying dispute. *See Henry Schein*, 139 S. Ct. at 529. Accordingly, the parties agreed to send that question to an arbitrator and it's not for us to answer.

What remains is the related question of whether the parties intended to allow an AAA administrator to apply the Healthcare Policy Statement before sending any gateway-arbitrability questions to the arbitrator. *See Rent-A-Center*, 561 U.S. at 69 n.1 (noting that the "'clear and unmistakable' requirement. . . . pertains to the parties' manifestation of intent" (emphasis omitted)).

**B.**

The text of the Agreement, including the AAA rules, shows that the parties intended to send gateway questions of arbitrability exclusively to an arbitrator. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 419 n.1 (2001) ("The [AAA] Rules . . . are not secondary interpretive aides . . . they are prescriptions incorporated by the express terms of the agreement itself."). The Agreement dictates that "any dispute . . . will be determined by submission to arbitration," not by litigation, and "that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties." The parties never got that far here because an AAA administrator "ma[d]e[] an initial, administrative determination [that] the [Healthcare Policy Statement] applie[d]." R.88-8 P.1689. It is unclear what the administrator was doing. There are two ways to view his decision. Perhaps the administrator independently interpreted the Agreement and read it to incorporate the Healthcare Policy Statement, which led the administrator to conclude that the parties did not intend to arbitrate the instant dispute without a post-dispute agreement or court order. Or perhaps the administrator was simply applying AAA's Healthcare Policy Statement because he concluded that this case concerns

healthcare and the AAA follows this policy no matter what a particular agreement says or what particular parties intended.

Either way, the end result was contrary to the text of the Agreement and the FAA. *First*, if the administrator was independently interpreting the Agreement, he erred because the parties contracted for an arbitrator (not an administrator) to do so. The Agreement indicates that "any dispute . . . will be determined by submission to arbitration." Under AAA's definition of arbitration, arbitration is when "the parties submit disputes to an impartial person (the arbitrator) for a decision." The Agreement also says that the arbitration "shall be conducted" by a single arbitrator. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 112 (1st ed. 2012) ("[S]hall is mandatory" (emphasis omitted)). There's no question that this dispute reached only an administrator, not an arbitrator.

Under AAA's rules, an arbitrator and an administrator are distinct. "The [a]dministrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator . . . . the [a]dministrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side." R.89-1 P.1748. Unsurprisingly, the administrator helps disputes get to an arbitrator and doesn't make merits rulings. On the other hand, "[a]rbitrators are neutral and independent decision makers who . . . . make the final, binding decision on the dispute . . . . The [a]rbitrator makes all the procedural decisions on a case not made by the administrator." R.89-1 P.1749. The arbitrator decides the merits of a dispute. And if an administrator could preempt a final merits ruling by an arbitrator, the administrator would effectively run afoul of the provision that administrators "cannot overrule or change an arbitrator's decisions or rulings." R.89-1 P.1748. The dispute here, the arbitrability of Johnson's claim, thus should've gone to an arbitrator for a "final, binding decision."

But is the instant arbitrability question a "procedural decision[]" delegated to the administrator in this case? We don't see how it could be.**[3]** Contract interpretation is a legal

---

**[3]**The dissent agrees that AAA's rules specifically assign arbitrability questions to the arbitrator while reserving AAA's "administrative duties" for the administrator as detailed in the arbitration agreement and the AAA's rules themselves. Dissent at 6. Where we differ is whether the AAA rules include an initial arbitrability

question. *See Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012). That's one reason why arbitrability is "for a court to decide" unless the parties clearly and unmistakably intend otherwise. *See Howsam*, 537 U.S. at 83–85. The procedural decisions AAA administrators make, in turn, are more akin to "administrative aspects of the arbitration, such as the appointment of the arbitrator, . . . preliminary decisions about where hearings might take place, and . . . handl[ing] the fees." R.89-1 P.1748. So it generally wouldn't make sense[4] to require clear intent to delegate arbitrability questions to an arbitrator but then allow either arbitrators or administrators to decide that legal question.

*Second*, if the administrator was instead following AAA's views of sound policy about when parties should be compelled to arbitrate notwithstanding what those parties agreed to, he likewise committed error. The administrator's actions could be read in this light. Consumer Rule 1(d) indicates that, before agreeing to administer the arbitration, "the AAA" will determine whether the "agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*." R.89-1 P.1718. If "the AAA decline[s] to administer an arbitration," the Rule indicates that the parties can proceed to litigation. *Id.* This administrative review may well be without regard to the parties' intent or the agreement's terms.

Although the AAA may choose for *itself* which claims it will arbitrate, it is not at liberty to "impose its own view of sound policy" regarding when or how parties should be allowed to arbitrate independent of *the parties'* own choices in their contract. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010). Indeed, the Supreme Court has reversed an

decision among these "administrative duties." The dissent points to no rule granting the administrator such authority, but instead locates the authority in the general requirement that "the AAA will administer the arbitration." *Id.* Our decision to follow the AAA's rule granting such authority to an arbitrator doesn't mean that the parties "contract[ed] the AAA's administrator out of the process," but instead means the parties intended the administrator to have the role the AAA's rules mandate: "to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration."

[4]The dissent suggests that requiring an administrator to determine arbitrability "was not an unusual decision" but is rather "the process by which the AAA typically administers all of its arbitrations"—a fact that "any party doing their due diligence would have seen." Dissent at 6–7. But we interpret the words of this Agreement in conjunction with AAA's rules without deference to AAA's "typical" practice. The Agreement or the AAA Rules could grant the administrator that authority, but in this case they do not.

arbitration panel that engaged in that sort of policymaking (even under the deferential review that applies to an arbitrator's decision) because "the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id.* (reversing under 9 U.S.C. § 10(a)(4)). In this case, too, AAA needs to keep in mind the text of the Agreement. If "an arbitrator's authority derives solely from the contract," *McDonald v. City of West Branch*, 466 U.S. 284, 290 (1984), then an AAA administrator's authority is likewise limited. In other words, an administrator can't "override the parties' express agreement in favor of general procedural rules." *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 841 (9th Cir. 2010).

We also see nothing in the Agreement that gives the administrator the right to make this policy choice for the parties. To be sure, the Agreement incorporates the AAA rules, which perhaps could be read to include the AAA's due process review under Consumer Rule 1(d). And Consumer Rule 53 says that "[t]he arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties" but that "[a]ll other Rules shall be interpreted and applied by the AAA." R.89-1 P.1740. But Consumer Rules 1(d) and 53 must be read together with the Agreement and the other rules to ascertain the parties' intent. *See Preston v. Ferrer*, 552 U.S. 346, 362–63 (2008). When an arbitration agreement and its incorporated rules seem to conflict, our job is to find the "best way to harmonize" them. *Id.* at 363 (quoting *Mastrobuono*, 514 U.S. at 63); *see* Scalia & Garner, *Reading Law* 180 ("The imperative of harmony among provisions is more categorical than most . . . ."). And we have a "skeptic[ism] of decisions that allow a court to [rely on] a particular aspect of an arbitration clause . . . and on that account scuttle arbitration itself." *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013).

We won't interpret this agreement to arbitrate to permit Johnson to avoid arbitration. The fundamental question here is arbitrability, "whether the parties have agreed to arbitrate." *Rent-A-Center*, 561 U.S. at 69. Our case law shows that the parties intended to delegate that important question exclusively to the arbitrator. *See Blanton*, 962 F.3d at 845, 849. And in addition to Rule 1(d) and Rule 53, the AAA rules specifically delegate the power to decide arbitrability to the arbitrator: "[t]he arbitrator shall have the power to rule on . . . [the] scope[] or validity of the arbitration agreement or . . . the arbitrability of any claim." R.89-1 P.1725. Because the arbitrability determination is one of the arbitrator's powers, Rule 53's prescription that "[t]he

arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers" likewise indicates that the appointment of an arbitrator is necessary. R.89-1 P.1740. The Healthcare Policy Statement also does not stand in the way of such an appointment. It makes clear that "the AAA will administer disputes between patients and healthcare providers" either when the parties enter into a post-dispute agreement or when "a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration." R.88-11 P.1700. Our decision will lead to such a court order—seemingly clearing the administrative path. Here, to give effect to both the parties' agreement that "the arbitration shall be conducted by a single, neutral arbitrator" and that the arbitration "shall be resolved using the rules of the American Arbitration Association," we can't read the AAA rules to preclude decision by an arbitrator.

## C.

The effect that letting the administrator determine arbitrability has on the type of judicial review the parties receive confirms our reading of the Agreement. The district court effectively reviewed the Agreement de novo. In doing that, the district court relied on a court's interpretation of the same set of AAA rules and policies to hold that the AAA rules effectively nullified an arbitration agreement. *See Woodward v. Emeritus Corp.*, 368 P.3d 487, 496–98 (Wash Ct. App. 2016). But by agreeing, clearly and unmistakably, to send the arbitrability question to the arbitrator, the parties here bargained for the narrow 9 U.S.C. § 10 review, not de novo review. *See, e.g.*, *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 601 (6th Cir. 2016) ("Accordingly, we will evaluate only whether Samaan's claims satisfy any of the grounds enumerated in 9 U.S.C. § 10(a).").

This is where the Agreement's requirement that the dispute would not be determined by litigation comes in. The district court determined the contract-interpretation question, so the dispute was determined by litigation contrary to the intent of the parties. But once an arbitrator interprets the Agreement, any judicial review under 9 U.S.C. § 10 wouldn't be review of the arbitrability question de novo but under the limited grounds identified (for fraud, corruption, etc.). Because the parties bargained for an arbitrator to interpret the Agreement and for the

courts to have a very limited role, it wouldn't make sense to allow an administrator's preemptive contract interpretation to be a portal to de novo judicial review.

**D.**

Johnson resists the conclusion that we should send the arbitrability question to an arbitrator with citation to *Dockser v. Schwartzberg*, 433 F.3d 421 (4th Cir. 2006). In *Dockser*, the AAA administrators resolved a dispute about how many arbitrators would be appointed and a party sought judicial review of that resolution. *Id.* at 428. The Fourth Circuit held that the number of arbitrators was determined exclusively by AAA's relevant rules and its administration thereof, with no role for the courts. *Id.* Because AAA administrators made that decision, Johnson argues, we should allow AAA administrators to make this decision.

The differences between this case and *Dockser* are in the arbitration clauses and the types of questions posed. In *Dockser*, the arbitration clause had no bearing on the number of arbitrators, whereas here the Agreement's requirement that the dispute be determined by arbitration conducted by a single arbitrator is relevant to whether an administrator may refuse to appoint an arbitrator. So rather than simply deferring to the AAA administrator's interpretation of their own rules, we are interpreting the text of the Agreement together with the relevant rules to ascertain the parties' intent. *See Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991) ("[T]he specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict . . . .").

In addition, *Dockser* decided "not a 'question of arbitrability,' but instead a procedural one." 433 F.3d at 426; *see also Howsam*, 537 U.S. at 84. *Dockser* dealt with "what kind of arbitration proceeding the parties agreed to," whereas here the relevant question is arbitrability—what the Agreement itself means. 433 F.3d at 426 (emphasis omitted) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). We agree with *Dockser* that it makes good sense to treat these different questions differently.

\* \* \*

Today's decision is a narrow one. We say nothing about whether the underlying dispute is arbitrable, only that the Agreement requires that an arbitrator make that determination. Both parties are free to make the arguments they made before us to the arbitrator.

For the foregoing reasons, we reverse and remand to the district court with instructions to enter an order granting SmileDirect's motion to compel arbitration.

———————————

**DISSENT**

———————————

CLAY, Circuit Judge, dissenting.   Defendant SmileDirectClub LLC ("SmileDirect") appeals the district court's decision to deny its motion to compel arbitration against Plaintiff Joseph Ciccio and others, who comprise a class of dentists, orthodontists, and consumers.  Upon the parties signing an agreement for the purchase of dental aligners by Plaintiffs, the parties were bound by the rules of the American Arbitration Association ("AAA"), which were incorporated into the agreement and governed when the parties would be required to submit their disputes to arbitration.  The question before us is whether those AAA rules may be ignored or will be considered essential terms of the contract.  In my view, those rules control our decision here.  For that reason, I disagree with the majority's decision, contrary to those rules, to compel arbitration. Today's decision severs an essential term of the parties' agreement and therefore runs afoul of the agreement itself.  Because we should interpret the agreement as written, I would affirm the district court's decision.

In 2019, Plaintiffs Dr. Joseph Ciccio, Dr. Vishu Raj, Dr. Arthur Kapit, and Deena Nigohosian brought this class-action lawsuit on behalf of dentists, orthodontists, and consumers against SmileDirect for engaging in false and misleading business practices in selling dental aligners.  Thereafter, Dana Johnson and several other SmileDirect customers joined the class-wide action in federal court.  SmileDirect moved to compel arbitration in connection with a contract for purchase signed by the parties. That contract contained an arbitration provision:

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered [b]y SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not [b]y lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court . . . .  I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association. (ECF No. 28-1 at PageID # 217.)

Upon review, the district court granted SmileDirect's motion to compel arbitration, ruling that the gateway question of arbitrability was included in the scope of the parties' contractual

agreement. In accordance with the district court's order, Johnson filed an arbitration demand with the AAA, pursuant to the parties' agreement to "[use] the rules of the [AAA]," to arbitrate their dispute. Subsequent to Johnson's demand, the AAA informed both parties that, according to the AAA's Healthcare Due Process Protocol, the Association "may only proceed forward on arbitration matters arising out of healthcare treatment agreements if the parties agree to binding forms of dispute resolution <u>after the dispute arises.</u>" (ECF No. 99-2 at PageID # 2593.) That requirement stemmed from the AAA's Consumer Arbitration Rules, which stipulated that "[w]hen parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." (ECF No. 89-1 at PageID # 1717.) Pursuant to those rules, the "AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*." (*Id.* at PageID # 1718.) And the AAA's Consumer Due Process Protocol incorporated a Healthcare Policy Statement that required a post-dispute agreement from the parties in order for them to proceed forward with arbitration. In relevant part, the parties, by agreeing to use the rules of the AAA in their contract, incorporated the following terms:

**Consumer Rule 1(d)**

The AAA administers consumer disputes that meet the due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the Consumer Due Process Protocol. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. (ECF No. 89-1 at PageID # 1718.)

**Consumer Due Process Protocol**

In some cases, the AAA is developing or has developed special dispute resolution policies and procedures governing particular transactional systems. A recent example is its current initiative with respect to ADR in contracts for health care services. Where the general principles set forth in this Protocol conflict with more specific standards developed under the auspices of the AAA or some other independent organization with relatively broad participation by affected parties, the latter should govern. (ECF No. 89-4 at PageID # 1780.)

**Healthcare Policy Statement**

In 2003, the American Arbitration Association ("AAA") announced that it would not administer healthcare arbitrations between individual patients and healthcare service providers that relate to medical services, such as negligence and medical malpractice disputes, unless all parties agreed to submit the matter to arbitration after the dispute arose. This policy is consistent with the *American Arbitration Association/American Bar Association/ American Medical Association Due Process Protocol for the Mediation and Arbitration of Health Care Disputes*. However, the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration. (ECF No. 88-11 at PageID # 1700.)

After being reminded by the AAA of these rules, Johnson declined to sign a post-dispute agreement and brought the dispute back to federal court for reconsideration. The district court, after referencing the terms of the contract, denied SmileDirect's second motion to compel arbitration, stating in sum that "[b]ecause Johnson has exhausted the arbitration process to which the parties agreed, the court will not compel him to start over." (ECF No. 117 at PageID # 2759.) More specifically, the district court noted that:

"SmileDirect [authored the] arbitration provision and chose to incorporate the AAA rules. When it did so, it unavoidably surrendered some of the parties' control over the process to the AAA . . . . To hold otherwise would be to treat the parties' agreement as meaning less than it actually says, which would, if anything, be contrary to the FAA's policy of honoring the commitments of contracting parties." (*Id.*)

In so ruling, the district court determined that Johnson had complied with the AAA arbitration rules, and because he chose "not to submit the matter to arbitration after the dispute arose," as permitted by the AAA's Healthcare Policy Statement, the arbitration requirement was satisfied. Thereafter, SmileDirect appealed the district court's decision. Notwithstanding the fact that Johnson has fully complied with all applicable rules and procedures, the majority argues that the district court erred in not requiring the continuation of the arbitration—which would then proceed outside the purview of the AAA rules. I depart from my colleagues for the following reasons:

On appeal, we are tasked with interpreting a contract where the plain terms of the agreement and the parties' intentions control. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279,

294 (2002) ("[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract[.]"); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (discussing how courts "should apply ordinary state-law principles that govern the formation of contracts" when interpreting arbitration agreements). Consequently, our role here was to enforce the agreement as written, which means "[we] are bound to interpret contracts in accordance with the expressed intentions of the parties—even if the effect of those intentions is to limit arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Although there is nothing ambiguous about the contract before us, even in the case of a contractual ambiguity, we are required to follow "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Id.* at 63. To suggest otherwise violates the following long-standing principle of contract law:

> "[I]n the absence of mental incompetence, fraud, misrepresentation, or deceit, one who executes a contract cannot avoid it on the grounds that he did not read it or was ignorant of its terms . . . One who accepts a written contract is conclusively presumed to know its contents and to assent to them. A party signing a written contract has a duty to inform him- or herself of its contents before executing it." 17A Am. Jur. 2d Contracts § 204.

In the instant case, rather than implement the contractual language, the majority would do quite the opposite. SmileDirect drafted a contract, which expressly resolved to using the AAA rules, and now wishes to flout those rules by revising the contract with the assistance of this court. I agree with the majority's statement at the onset of its opinion that "this case is about whether the Agreement incorporates the Healthcare Policy Statement," even though it then proceeds to repudiate the Healthcare Policy Statement.

Turning to the plain language of the agreement, the threshold question of what the agreement incorporated is readily apparent: [disputes] shall be resolved using the rules of the American Arbitration Association. (ECF No. 28-1 at PageID # 217.) As part of the AAA rules, the AAA maintains consumer protocols that ensure a fair process in healthcare disputes. The Healthcare Policy Statement's incorporation into the agreement was clear to anyone who read the AAA's rules. The parties made their decision to abide by the rules when they signed the contract incorporating rules that included the Healthcare Policy Statement, but in my colleagues'

view, those rules may simply be disregarded if they interfere with requiring the parties to proceed with the arbitration.

The majority attempts to make an issue of the fact that the AAA administrator, rather than "an arbitrator," applied the Healthcare Policy Statement to the parties' agreement. Strikingly, the majority manages to argue that *because* the parties incorporated the AAA rules into their agreement, there is "clear and unmistakable" evidence that they necessarily incorporated an agreement to appoint an arbitrator to decide the gateway issue of whether the Policy Statement applied to the parties' agreement. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In doing so, it points to an AAA rule, where "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (ECF No. 89-1 at PageID # 1725.) Yet, the reader must ignore several other AAA rules that preclude the appointment of an arbitrator before reaching the one cited by the majority. Indeed, proceeding the rule cited, the AAA specifically references its delegation of duties and asserts that the AAA itself shall be the arbiter of its own rules:

> When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so. (ECF No. 89-1 at PageID # 1724.)[1]

No further evidence was needed of what the AAA rules require than what occurred in this case. Here, the AAA determined that proceeding to arbitration would violate their due process rules without its mandatory post-dispute agreement. When the parties agreed that the dispute

---

[1]The majority claims that we agree that the AAA's rules assign arbitrability to the arbitrator, and "administrative duties" to the administrator, but that is not the case. To the contrary, the AAA's rules do not clearly delineate these roles as the majority alleges. Instead, as stated in the rule cited above, the AAA has the final decision on who administers cases under its rules.

"shall be resolved using the rules of the AAA," they were aware that those rules called for an administrator to render the AAA's initial determination regarding the requirements of the organization's own rules before proceeding to arbitration. That was not an unusual decision, nor a decision out of lockstep with the rules of the AAA. Quite the contrary, that decision followed the process by which the AAA typically administers all of its arbitrations. That provides the "clear and unmistakable" evidence that the parties intended to have these gateway issues decided in accordance with the AAA's procedures and policies. *Blanton*, 962 F.3d at 844.

Adding insult to injury, the majority frames the AAA administrator's decision to apply the Consumer Due Process Protocol as imposing a policy choice on the parties, citing to a proposition in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 677 (2010). In that decision, the Supreme Court rejected an arbitration panel's decision to impose its policy preference on an agreement that was silent as to whether it allowed class arbitration. *See id.* at 673. But here, no such silence exists that would allow the administrator to impose its own views. The administrator was simply following the AAA's governing rules for healthcare disputes, which any party doing its due diligence would have seen. And even if the question were posed to the arbitrator to decide, the parties' decision to resolve their disputes, using the AAA rules, makes it clear that they would need to abide by the Consumer Due Process Protocol and Healthcare Policy Statement.

Similarly, as the majority points out, it is true that "parties [may] agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). But that question "is itself a question of contract." *Id.* As we have stated, "we should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020) (quoting *Rent-A-Center*, 561 U.S. at 70 n.1). To allege that the parties here wanted to contract the AAA's administrator out of the process, in the absence of any evidence to that effect, is to ignore that the parties intended to have their disputes resolved under the rules of the AAA. Pursuant to their contract, the parties delegated decision-making authority to the due process

rules written by the AAA. That decision was made when the parties signed the agreement, explicitly contracting to that view.

Further, the majority professes to believe that the AAA's incorporation of the Consumer Due Process Protocol "may be well without regard to the parties' intent or the agreement's terms." But to the contrary, it was exactly what the parties intended and what the written agreement's terms specifically stated. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) ("The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms.") Indeed, both parties to the contract were equal participants in signing and executing the contract. To say that the AAA administrative protocol, which had been in place for years, was less necessary to the agreement, would be to assume it was not important to the consumers who signed it. Since 2003, the AAA has used its Healthcare Due Process Protocol to provide consumers with confidence in arbitrations run by the AAA. That recommendation arose out of a joint discussion between the AAA, the American Bar Association (the world's largest voluntary organization for legal professionals), and the American Medical Association (the nation's leading organization for physicians) over twenty years ago. The AAA, upon crafting its protocol, noted that the "due process safeguards developed by the [Association] . . . give consumers the opportunity to have a prompt resolution of their disputes, while at the same time assuring that the parties' Constitutional and other legal rights and remedies are protected."[2] As a result, we cannot assume these same consumers would have signed the contract without the AAA rules incorporated to provide due process protections and a fair process between the parties.

We must remember that "[a]rbitration. . . is a matter of consent, not coercion." *In re: Auto Parts Antitrust Litig.*, 951 F.3d at 382; *see also Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007); 4 Am. Jur. 2d Alternative Dispute Resolution § 48 (1998) ("[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, the courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear

---

[2]American Arbitration Association Healthcare Due Process Protocol, https://adr.org/sites/default/files/document_repository/Healthcare-Due-Process-Protocol.pdf (last visited May 27, 2021).

mutual understanding of the ramifications of that assent."). The decision to consent to arbitrate arises from a "foundational FAA principle," which this court should heed. *Stolt-Nielsen*, 559 U.S. 662 at 684. Importantly, the district court here denied SmileDirect's *second* motion to compel arbitration, after granting their initial motion to compel, because the parties had completed the AAA process they contracted to follow. As part of that ruling, the gateway issue of whether arbitrability applied to the agreement had already been resolved. In effect, the majority would like us to ignore the rules because they would not provide for the outcome desired by SmileDirect, rather than what the parties agreed to. That is a dangerous proposition. Plaintiffs, in this case, consented to an arbitration that would follow the AAA's due process rules – no less and no more. Those rules were not written, and then contracted to, without purpose. I depart from my colleagues in their view that the parties did not receive exactly what they bargained for when signing their contract and would affirm the judgment of the district court.