[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11504

_____

CHARLES HAROLD BEDGOOD,
individually and on behalf of all other
persons similarly situated,
JOEL WILSON BRANDON,
individually and on behalf of all other
persons similarly situated,
HANNAH LYN HEIL-BRANDON,
individually and on behalf of all other
persons similarly situated,
EDDIE MATHEWS JR.,
individually and on behalf of all other
persons similarly situated,
REENA T. SMITH, et al.,
individually and on behalf of all other
persons similarly situated,

2                    Opinion of the Court                    22-11504

Plaintiffs-Appellees,

*versus*

WYNDHAM VACATION RESORTS, INC.,
WORLDMARK, THE CLUB,
WYNDHAM RESORT DEVELOPMENT CORPORATION,

Defendants-Appellants.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00418-PGB-DCI

————————————

Before JORDAN, NEWSOM, Circuit Judges, and GRIMBERG, District
Judge.*

NEWSOM, Circuit Judge:

This is an odd case. The lead defendant here, Wyndham Vacation Resorts—which, to distinguish it from other Wyndham-related entities, we'll just call "Resorts"—entered into purchase agreements with a number of timeshare owners. Those agreements required parties to arbitrate their disputes in the American

---

* The Honorable Steven D. Grimberg, United States District Judge for the Northern District of Georgia, sitting by designation.

Arbitration Association rather than litigate them in court. So when relationships soured, several purchasers filed arbitration petitions with the AAA. The AAA, though, dismissed each purchaser's petition on the ground that Resorts had "failed to comply with the AAA's policies." In view of Resorts' non-compliance, the AAA "decline[d] to administer [each purchaser's] claim and any other claims between [Resorts] and its consumers at this time" and thus instructed the purchasers that they could "submit [their] dispute[s] to the appropriate court for resolution."

Thwarted in their efforts to arbitrate, the purchasers—by that point joined by similarly situated individuals proceeding against other Wyndham-related entities—sued in federal court. The defendants' response? You guessed it: They moved to stay the litigation and direct arbitration before the AAA—the very entity that, on account of Resorts' own noncompliance, had refused to consider the original purchasers' arbitration petitions.

The principal question here is whether, having seemingly stymied the purchasers' efforts to arbitrate, Resorts and its co-defendants can now prevent them from litigating on the ground that their agreements require arbitration. For reasons we'll explain, we hold as follows: (1) The three purchasers who originally sought to arbitrate their claims against Resorts, only to see their petitions rejected on account of Resorts' noncompliance with AAA policies, may proceed to litigation; and (2) three other purchasers who never formally submitted their claims against Resorts to the AAA, but whose agreements with Resorts contained identical arbitration

provisions, may likewise proceed to litigation; but (3) two purchasers who had an agreement with different Wyndham-related entities must return to the district court for further consideration of the Federal Arbitration Act's applicability to their dispute.

## I

### A

At the outset, it will help to get straight the Wyndham-related entities involved in this case. Wyndham Vacation Resorts (again, "Resorts"), Wyndham Resorts Development Corporation (hereinafter "Development"), and WorldMark, The Club offer timeshare ownership interests across their respective portfolios of properties. Resorts manages and sells interests at resorts and hotels marketed and sold under the Club Wyndham name. Development does the same for WorldMark-branded properties. And WorldMark, The Club (hereinafter "WorldMark") is the non-profit owners' association for WorldMark-branded resorts and hotels. The three entities are affiliated—either through connection to their common parent Travel + Leisure Co., in the case of Resorts and Development, or through their inventory, in the case of Development and WorldMark—but they maintain separate corporate identities.

To purchase a timeshare interest with Resorts, Development, or WorldMark (collectively, "the defendants"), interested buyers must, of course, sign a contract. And that's exactly what the eight named plaintiffs in this case did. Charles Bedgood, Joel Brandon, Hannah Heil-Brandon, Eddie Mathews, Reena Smith,

and Roslind Harper contracted with Resorts; Justin Diaz and Candice Clark contracted with Development and WorldMark.

All parties' agreements contain nearly identical arbitration clauses. Those clauses provide that "any dispute" between the parties "be determined exclusively and finally by individual arbitration[.]" The contracts are governed by the Federal Arbitration Act ("FAA"), and they designate the American Arbitration Association ("AAA") as the administrator. The agreements further provide that, in the event of a dispute, the AAA will appoint an independent arbitrator "under [the AAA's] Consumer Arbitration Rules," which, in turn, incorporate the AAA Consumer Due Process Protocol. Finally, as relevant here, the contracts contain both (1) a forum selection clause specifying Orange County, Florida as the sole venue for arbitration unless the parties otherwise agree or the independent arbitrator authorizes a telephonic hearing, and (2) a damages provision limiting the seller's liability to the total amount paid under the agreement.[1]

The Consumer Arbitration Rules and the Due Process Protocol articulate principles and policies that govern the filing, conduct, and resolution of disputes within the AAA's arbitral forum. *See* American Arbitration Association, *Consumer Arbitration Rules* (amended and effective Sept. 1, 2014), adr.org/sites/default/files/Consumer-Rules-Web.pdf; American Arbitration

---

[1] The only difference is that Resorts' arbitration provision contains an explicit prohibition on class actions, whereas Development's and WorldMark's clauses don't.

6                    Opinion of the Court                    22-11504

Association, *Consumer Due Process Protocol* (effective Apr. 17, 1998), https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf.  The rules delegate ministerial tasks and administrative determinations to the AAA administrator.  *See Consumer Arbitration Rules, supra* at 6.  Of particular importance here, Commercial Arbitration Rule 12 outlines the administrator's arbitration-clause-vetting process and attendant procedures.  *Id*. at 16–17; 43.  By contrast, the arbitrator—not the administrator—-makes all merits-based decisions.  *Id*. at 44.

The contracts at issue here stipulate that "[i]n the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling."

**B**

Dissatisfied with their timeshare programs, and pursuant to the arbitration clause in their contracts, plaintiffs Bedgood, Brandon, and Heil-Brandon sought to arbitrate breach-of-contract and fraudulent-inducement claims against Resorts.  To that end, they filed arbitration petitions with the AAA.

After initial review but before appointing an arbitrator, the AAA summarily rejected Bedgood's and the Brandons' petitions on the ground that Resorts had "failed to comply with the AAA's policies."[2]  The AAA explained that it would "decline to administer this

---

[2] The defendants insist that the record doesn't show—and indeed, that we have no way of knowing—*which* AAA policies Resorts violated.  But in their reply brief in support of the motion to compel arbitration in the district court,

claim and any other claims between [Resorts] and its consumers at this time."[3] But, it said, if Resorts "advise[d] the AAA in the future of its intention to comply with the AAA's Consumer Arbitration Rules . . . the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward." To regain access to the AAA forum, the AAA said, Resorts would need, "at a minimum, [to] register its [arbitration] clause" with the AAA's Consumer Clause Registry, a pre-arbitration vetting mechanism designed to ensure that arbitration clauses meet the AAA's minimum due-process requirements. The record doesn't reflect, nor have we been told, whether Resorts has submitted its arbitration clause to the AAA for review or whether it otherwise intends to comply with the

---

the defendants represented that "the AAA declined to administer arbitrations because Wyndham's *forum selection clause* and *damages clause* were 'at odds with the AAA's rules.'" Defendants' Reply in Support of Motion to Compel Arbitration, Doc. 19 at 1–2 (emphasis added). In any event and as we'll explain, knowing which particular AAA policies Resorts violated is irrelevant to our analysis.

[3] Bedgood's letter referred to "Wyndham Vacation Club," but the entity's legal name is "Wyndham Vacation Resorts," and Bedgood's contract was clearly with "Wyndham Vacation Resorts." The Brandons' contract was also with "Wyndham Vacation Resorts," but their AAA letter referred to "Wyndham Destinations," which, the defendants have explained, is the "general trade name for Travel + Leisure Co's timeshare business." The defendants have conceded that both AAA letters refer, at the very least, to Resorts. *See* Br. of Appellants at C-1 (stating that all references to "Wyndham" in the brief refer to "Wyndham Vacation Resorts"); *id.* at 47 (stating explicitly that "the record is limited to the AAA's refusal to administer arbitrations from Defendant *Wyndham*") (citing the Bedgood and Brandon AAA rejection letters) (emphasis in original).

AAA's Consumer Arbitration Rules (or even challenge the AAA's determination that its clause is noncompliant).

Having declined to administer Bedgood's and the Brandons' arbitrations on account of Resorts' failure to comply with the AAA's policies, the AAA informed the plaintiffs that they could "submit [their] dispute[s] to the appropriate court for resolution" pursuant to Rule 1(d) of the Consumer Arbitration Rules. Bedgood, Brandon, and Heil-Brandon thus sued in the United States District Court for the Middle District of Florida. They were joined by plaintiffs Mathews, Harper, Smith, Diaz, and Clark in a putative class action on behalf of similarly situated individuals.

After the AAA declined to adjudicate the plaintiffs' attempts to resolve the dispute in the arbitral forum that it had specified in its timeshare contracts, Resorts then objected to the plaintiffs' efforts to litigate in federal district court. Pursuant to Sections 3 and 4 of the FAA, Resorts, together with Development and WorldMark, moved to stay litigation and direct arbitration in the AAA—the very forum in which the plaintiffs had attempted to arbitrate their claims in the first place. In the alternative, the defendants requested that the district court appoint a substitute arbitrator—*i.e.*, one not affiliated with the AAA—under Section 5 of the FAA.

Drawing on Resorts' conduct, its corporate relationship with Development and WorldMark, and their nearly identical arbitration clauses, the district court denied the motion to stay litigation and direct arbitration as to all parties. The court observed that "[s]ections 3, 4, and 5 [of the FAA] create mechanisms for the courts

to be able to enforce arbitration agreements by, respectively, staying litigation, compelling arbitration, and/or designating a substitute arbitrator." But, the court noted, it could "grant the requested relief only if it ha[d] the authority to act under the FAA."

The district court held that it lacked this authority under FAA Sections 3, 4, and 5. The impediment on all fronts, it held, was the defendants' own failure to comply with the AAA's rules. Relying on the AAA's determination that Resorts flouted its policies, the district court concluded that all the defendants were "in default" with the forum, rendering stay relief under Section 3 of the FAA unavailable. The court further held that the defendants couldn't obtain an order directing the parties to arbitration under Section 4 because the plaintiffs hadn't "fail[ed], neglect[ed], or refus[ed]" to arbitrate. To the contrary, the court found that they attempted to arbitrate but had been rebuffed by the AAA on account of the defendants' failure to comply with the forum's policies. Finally, the court held that the defendants weren't entitled to a substitute arbitrator under Section 5 because the AAA would be an available forum "if it were not for [d]efendants' negligent failure to follow the AAA's rules." "[The] defendants' actions," the court concluded, "foreclosed the arbitration of these claims under the plain language of the FAA."

Because it had lacked authority to stay the litigation, direct arbitration, or substitute an arbitrator, the district court held that all plaintiffs could proceed to litigation of their claims. The court didn't proceed any further—for instance, to address whether the

arbitration clause itself was valid and enforceable or whether the underlying contract claims were arbitrable. Instead, it limited its holding to the applicability of the FAA's provisions given the defendants' unusual litigating positions.

The defendants promptly filed this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(A)–(B).

## II

Collectively, the defendants raise four issues on appeal. First, they assert that the district court erred in concluding that the defendants were "in default" within the meaning of Section 3 of the FAA, and thus ineligible for a stay of litigation. Second, they contend that the district court erred in declining to direct arbitration because, they say, they are "part[ies] aggrieved" by plaintiffs' "failure, neglect, or refusal" to arbitrate within the meaning of Section 4 of the FAA and because, in any event, the AAA would administer the arbitration if ordered to do so. Third, they argue that the district court erred in refusing to appoint a substitute, non-AAA-affiliated arbitrator under Section 5 of the FAA. And finally, they contend that the district court shouldn't have determined the arbitrability of the underlying claims but should instead have referred that question to an arbitrator.

For simplicity's sake, we'll work through each of the issues with respect to Resorts, and then separately turn our attention to Development and WorldMark.[4]

**A**

For reasons we'll explain in this section, we hold that Resorts' failure to comply with the rules of its chosen arbitral forum renders the remedies specified in Sections 3 and 4 of the FAA unavailable to it and, accordingly, that the plaintiffs who have contracts with Resorts—Bedgood, Brandon, Heil-Brandon, Mathews, Smith, and Harper—may proceed to litigation. Because we conclude that we lack jurisdiction over it, we decline to review the district court's interlocutory order denying Resorts' motion for a substitute arbitrator under Section 5. And we reject Resorts' final argument—that the district court exceeded its authority in determining the arbitrability of the plaintiffs' underlying claims—because, in fact, the court never addressed arbitrability.

**1**

Section 3 of the FAA entitles a party to stay the litigation of an action that falls within an arbitration agreement's terms unless the party is "*in default* in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added). In its letters to Bedgood and the Brandons, the AAA declined to administer their claims on the

---

[4] We review the denial of a motion to direct arbitration de novo. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1293 (11th Cir. 2022). The district court's factual findings are reviewed for clear error. *White Springs Agric. Chems., Inc. v. Glawson Inv. Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011).

ground that Resorts had "failed to comply with the AAA's policies regarding consumer claims," referring specifically to both the AAA Consumer Arbitration Rules and the AAA Consumer Due Process Protocol. Relying on the AAA's determination to that effect, the district court concluded that Resorts was "in default with [its] contractually chosen forum" and accordingly refused to stay litigation under Section 3.

Before us, Resorts argues that the district court erred in relying on the AAA's determination in deciding "default" because, it says, the question whether its arbitration clause complies with AAA policies is reserved to the arbitrator. According to Resorts, the AAA exceeded its authority in making the default determination, and the district court therefore erred in relying on that determination to make its own conclusion regarding default.

We disagree for several reasons, which we'll explain in turn. First, the contracts at issue are governed by the AAA's Consumer Arbitration Rules, which expressly delegate policy-compliance determinations to the AAA administrator. Second, no provision of the parties' contracts reallocates that authority to the arbitrator. Third, the mere fact that the AAA's determination lacked specificity—inasmuch as it didn't identify precisely which policies Resorts had violated—doesn't undermine its legitimacy. Accordingly, we hold that the AAA was empowered to conclude that Resorts' arbitration clause violated its policies, and that the district court didn't err in relying on the AAA's determination to conclude that Resorts was "in default" within the meaning of Section 3.

**a**

Resorts' primary argument turns on whether the parties' contracts delegate the power to determine whether their arbitration clauses comply with AAA policies to a AAA administrator or, instead, to an independent arbitrator. We think it's the former.

As already explained, the contracts at issue here specify that the AAA will conduct arbitrations in accordance with its Consumer Arbitration Rules. Those rules require arbitration clauses to meet certain minimum due-process standards—concerning, for example, the availability of fora and the adequacy of remedies—before the AAA will agree to administer an arbitration between the parties to the contract.

Those rules also prescribe distinct roles for the administrator and arbitrator. "The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator." *Consumer Arbitration Rules, supra*, at 6. "[The] administrator," however, "does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side." *Id*. By contrast, the rules state that "[a]rbitrators are neutral and independent decision makers" who "make the final, binding decision . . . on the dispute." *Id*. at 7. In short, the administrator—as the name would suggest—makes administrative determinations, while the arbitrator decides the merits.

Importantly here, the Consumer Arbitration Rules make clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be

14                    Opinion of the Court                    22-11504

made by the AAA before it refers the case to an arbitrator. The rules describe the AAA's review of an entity's consumer arbitration clause "for material compliance with due process standards" and the resulting "determination whether or not to administer arbitrations pursuant to that clause" as "administrative determination[s] by the AAA." *Id.* at 16–17. While that determination "cannot be relied upon or construed as a legal opinion or advice regarding the enforceability" of the agreement, there is no reason, we think, why it can't underlie a district court's conclusion that an entity is "in default" with the arbitral forum under FAA Section 3. *Id.*

Thus, the AAA administrator was within its prerogative to determine that Resorts was out of compliance with its policies. The district court's ensuing reliance on that determination to conclude that Resorts was "in default" with the forum was not improper.[5]

---

[5] Resorts points to one of our unpublished decisions and a Sixth Circuit decision that, it says, require us to hold otherwise. We disagree. *Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015), is both non-binding and off-point. There, we held, unremarkably, that "[the] AAA's administrative determination is not binding on this Court" and rejected the plaintiffs' argument "that [the] AAA's refusal to arbitrate claims . . . because of a non-compliant damages provision renders the arbitration provision invalid or unenforceable." *Id.* at 783. But of course; an arbitration clause's validity and enforceability are merits-based issues reserved to the arbitrator, issues over which the administrator retains no authority. This case is different: The AAA and the district court didn't—and we don't—address Resorts' clause's validity or enforceability. *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021), is likewise distinguishable.

22-11504                Opinion of the Court                15

**b**

Resorts separately points to two provisions of the arbitration agreement that, it says, require resolution of the clause-compliance question by an arbitrator.

First, it cites the so-called delegation clause, which reserves questions of "enforcement, interpretation, or validity" of the agreement to an arbitrator. Resorts insists that this clause covers the question whether its arbitration clause complies with AAA policies. But Resorts misunderstands the nature of the AAA's determination. The AAA didn't opine on the arbitration clause's "enforcement, interpretation, or validity." It made no attempt to compel (or forbid) the parties' compliance with the contract's provisions, nor did it declare that the contract itself was (or wasn't) in force and effect. *See Enforcement*, Black's Law Dictionary (11th ed. 2019) ("[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement"); *Contract*, *id.* (noting that a "valid" contract is one that is "fully operative in accordance with the parties' intent"). Nor did it apply law to fact or otherwise determine whether or how the text covers the parties' dispute. *See Interpretation*, *id.* ("ascertainment of a text's meaning; specif., the

---

There, the Sixth Circuit determined that an arbitrator—rather than an administrator—had to determine whether the underlying claim was arbitrable. *See id.* at 579–80. But that, too, is a merits issue, quite unlike the administrative determination that an arbitration clause violates the forum's generally applicable policies.

determination of how a text most fittingly applies to particular facts"). Instead, the AAA merely determined that the arbitration clause—irrespective of its "enforcement, interpretation, or validity"—violated AAA policies and thus declined to open its forum to the parties. The AAA's determination thus falls outside the delegation clause's purview.

Second, Resorts points to the conflicts clause, which states that "in the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling." Under that provision, Resorts says, the contract requires the AAA to administer the arbitration according to the agreements' terms. But the AAA isn't a party to the contract. And, at least in this context, we can say it "goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). So Resorts' argument—as with any that would force an entity to adhere to a contract it never agreed to—is a non-starter.[6]

**c**

Finally, Resorts assails the generality of AAA's determination that it was out of compliance. The AAA, Resorts insists, was required to specify precisely which policies it had violated. The reason, we're told, is that while the AAA administrator can make

---

[6] To be clear, our analysis is based in part on the fact that we aren't considering a record where a nonsignatory is seeking to enforce an arbitration agreement. *Cf. Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement.").

"empirical" determinations—like, say, whether required filing fees have been paid—it cannot make "subjective" determinations of the sort that would underlie a conclusion that a party was out of compliance with AAA policy. *See* Oral Arg. at 14:53–15:07.

We disagree. According to the Consumer Arbitration Rules, the AAA is empowered to make all policy-compliance determinations. Rule 12, in particular, explains that the AAA vets arbitration clauses for "material compliance with due process standards" up front, long before an arbitration petition is filed, fees are paid, or an arbitrator is appointed. *See Consumer Arbitration Rules*, *supra* at 16–17. That vetting process covers all arbitration clauses and, so far as we can tell, tests for compliance with all AAA policies. Because the Consumer Arbitration Rules don't draw the "empirical"-"subjective" distinction that Resorts posits, we won't either. Again, Resorts' contracts prescribe arbitration in the AAA and in compliance with the AAA's Commercial Arbitration Rules. And again, those rules, in turn, empower the AAA to answer the "subjective" questions that go to whether a party's arbitration clause complies with AAA policies.[7]

**d**

Having concluded that the AAA was empowered to determine whether Resorts violated AAA policies, we turn to the

---

[7] In any event, as already noted, Resorts told the district court that the AAA found it noncompliant in two specific respects: "[T]he AAA declined to administer arbitrations because Wyndham's forum selection clause and damages

question whether the district court erred in concluding that Resorts was "in default" within the meaning of Section 3.  It did not.  In its rejection letters to Bedgood and the Brandons, the AAA stated that Resorts had "failed to comply with the AAA's policies."  To be sure, the AAA's determination that Resorts' arbitration clause violated AAA policies wasn't *binding* on the district court.  The district court could have discredited or ignored it.  But the court didn't reversibly err in accepting it as the basis for its own conclusion that Resorts was "in default with the arbitration proceedings."  That's especially true given that Resorts has made no effort to investigate—let alone remedy—its noncompliance before the AAA.  *See* Oral Arg. at 2:56–3:48.  The district court thus didn't err in concluding that Resorts was in "default" with the AAA.

## 2

Resorts next contends that the district court erred in refusing to direct arbitration in the AAA.  Orders staying litigation and directing arbitration are "parallel devices."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  Even so, they are governed by separate statutory sections and attendant standards.  Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration

clause were 'at odds with the AAA's rules.'" Defendants' Reply in Support of Motion to Compel Arbitration, Doc. 19 at 1–2.

proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The district court held that Resorts wasn't a "party aggrieved by [any] alleged failure, neglect, or refusal" of plaintiffs Bedgood, Brandon, and Heil-Brandon, all of whom attempted to arbitrate pursuant to their agreements. The court further concluded that the plaintiffs who hadn't formally sought to arbitrate didn't have to because their contracts contained nearly identical arbitration clauses and, therefore, that their attempts to arbitrate would have been "futile."

Section 4 prescribes two conditions to relief. They are separate, but they are causally related: first, the party resisting arbitration must have "fail[ed], neglect[ed], or refus[ed]" to arbitrate; and second, the party seeking to direct arbitration must have been "aggrieved" *by* that failure, neglect, or refusal. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011) ("After all, FAA § 4 is only triggered when one party has expressed a 'refusal'[, failure, or neglect] to arbitrate, and the other party has been *thereby* 'aggrieved.'" (emphasis added)).

The plaintiffs who had contracts with Resorts are properly sorted into two groups: (1) Bedgood, Brandon, and Heil-Brandon, who petitioned the AAA to arbitrate; and (2) Mathews, Smith, and Harper who didn't. With respect to Group (1)—plaintiffs who contracted with Resorts and tried to arbitrate—Resorts isn't a "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. § 4. To put the matter plainly, because each of the Group (1) plaintiffs attempted to arbitrate, there was no

"failure, neglect, or refusal" by which Resorts could have been "aggrieved." Bedgood and the Brandons filed petitions with the AAA to pursue their claims in accordance with their contracts, and their actions and representations in this Court evince a genuine desire to arbitrate. They were thwarted in that pursuit by Resorts' own conduct.

Before us, Resorts asserts that the AAA "will comply with any court orders issued from litigation involving the parties to the dispute"—the point apparently being that a court need only issue an order demanding that the AAA administer the arbitration. But Resorts is missing the point. It is *ineligible* to move to direct arbitration under Section 4 because it hasn't been "aggrieved" by any "failure, neglect, or refusal" on the part of Bedgood, Brandon, or Heil-Brandon to arbitrate.

Group (2)—comprising plaintiffs who contracted with Resorts but who didn't formally seek to arbitrate—presents a closer call. Groups (1) and (2) have identical arbitration agreements with Resorts. Group (1) received AAA rejection letters expressly stating that "[p]rior to the filing of this arbitration, [Resorts] failed to comply with the AAA's policies regarding consumer claims" and that, "[a]ccordingly, we must decline to administer this claim and *any other claims* between [Resorts] and its consumers at this time . . . ." Doc. 1-2 at 2–3 (emphasis added). To be sure, the Group (2) plaintiffs "fail[ed], neglect[ed], or refus[ed]" to arbitrate, so the first condition to Section 4 relief is met. But the second, causal condition isn't, because Resorts can't demonstrate that it has been "thereby

aggrieved." *Strong*, 651 F.3d at 1256. To the extent that Resorts is aggrieved, it was aggrieved either by its own failure to bring its arbitration clause into compliance with AAA policies or, at the very least, by the AAA's decision to that effect, not the Group (2) plaintiffs' conduct. Without any indication that Resorts has brought or intends to bring its arbitration agreements into line with AAA policies, it can't claim to have been "aggrieved" by the Group (2) plaintiffs' failure or refusal to arbitrate.

### 3

Resorts separately argues that even if the district court was correct to conclude that Resorts couldn't invoke Sections 3 and 4 of the FAA, it erred in refusing to appoint a substitute, non-AAA-affiliated arbitrator under Section 5. We conclude that we lack jurisdiction to consider Resorts' substitute-arbitrator argument.

We're "generally precluded from hearing interlocutory appeals under the final judgment rule." *Wajnstat v. Oceania Cruises, Inc.*, 684 F.3d 1153, 1155 (11th Cir. 2012); *see also Jenkins v. Prime Ins. Co.*, 32 F.4th 1343, 1347 (11th Cir. 2022) ("Congress has not given us the power to review interlocutory orders at will.") (quoting *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020)). The FAA "carves out exceptions to the general rule allowing review of some"—but, importantly, not all—"interlocutory orders." *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352 (11th Cir. 2021). In particular, the FAA provides for immediate appeals of orders "refusing a stay of any action under section 3" and those "denying a petition under section 4 . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(A–

B).   By contrast, the Act says nothing one way or the other about whether a party may immediately appeal an order refusing to appoint a substitute arbitrator under Section 5.  Because the statute specifically authorizes interlocutory appeals of Section 3 and Section 4 orders but doesn't mention Section 5 orders, we conclude that we lack jurisdiction over the district court's substitute-arbitrator decision.  *See Hamrick*, 1 F.4th at 1352.[8]

Nor do we have pendent jurisdiction.  "Pendent appellate jurisdiction is present when a nonappealable decision is 'inextricably intertwined' with the appealable decision or when 'review of the former decision [is] necessary to ensure meaningful review of the latter.'" *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)).  "Issues are not inextricably intertwined with the question on appeal when the appealable issue can be resolved without reaching the merits of the nonappealable issues." *Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019) (internal quotation marks omitted).  We needn't resolve the Section 5 issue to reject Resorts' contentions with respect to Sections 3 and 4, both of which are resolvable by

---

[8] Because this case is already on interlocutory appeal from the district court's order refusing to stay litigation and direct the parties to arbitration, Resorts can't rely on the principle that an appeal from a final judgment brings up all interlocutory orders that led to the judgment. *See, e.g., Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018).

reference to statutory language and the AAA Consumer Arbitration Rules alone.

**4**

Finally, Resorts argues that the district court erred in determining the question of arbitrability rather than referring that issue to an arbitrator—as, it says, our decision *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284 (11th Cir. 2022), required it to. In particular, Resorts seems to contend that an arbitrator should have decided the arbitrability of the plaintiffs' underlying breach-of-contract and fraudulent-inducement claims, as well as (perhaps) the arbitration agreement's enforceability. Even if Resorts properly presented that argument in the district court—we're dubious—the argument fails because the district court didn't need to, and didn't, decide the arbitrability issue.

The district court never decided whether the arbitrability question was itself arbitrable. Instead, it decided the case on threshold procedural grounds. *Attix* was very different in that important respect. It held that the parties had unmistakably delegated "the arbitrability dispute in th[at] case—*i.e.*, whether the parties' agreement to arbitrate Attix's claims is enforceable under the Dodd-Frank Act"—to an arbitrator. *Id.* at 1293. We thus held that "the district court erred in [] deciding whether" the dispute was arbitrable under the Dodd-Frank Act. *Id.* at 1289. The court should have stopped, we said, at deciding *who* was empowered to decide the arbitrability question.

The district court here, by contrast, never determined whether the plaintiffs' breach-of-contract and fraudulent-inducement claims were arbitrable, nor did it resolve those claims on the merits. Nor, for that matter, did the court opine on the "enforcement, interpretation or validity of [the parties'] [a]greement" more generally. Thus, it never decided whether the arbitrability of the claims themselves or the agreement's enforceability was a question for arbitration. Indeed, the district court had no reason to decide the arbitrability issue because it answered antecedent questions about (1) "whether the parties agreed to arbitrate the claims at issue" and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." As to the first question, it held that the parties had agreed to arbitrate the underlying dispute. And as to the second, it found that the AAA had closed its doors to the purchasers because of Resorts' refusal to comply with AAA policies. The district court thus held on procedural grounds that the defendants couldn't avail themselves of the FAA's tools, and it accordingly directed the parties to litigation. *Attix* is inapplicable here.

* * *

For the foregoing reasons, we affirm the district court's denial of Resorts' motion to stay litigation and direct arbitration as to plaintiffs Bedgood, Brandon, Heil-Brandon, Mathews, Smith, and Harper. These plaintiffs may proceed to litigation of their claims against Resorts.

**B**

Development and WorldMark raise the same four issues as Resorts: The district court, they contend, erred in (1) relying on the AAA's determination that the defendants were out of compliance with the AAA's policies to conclude that they were "in default" within the meaning of FAA Section 3, (2) refusing to direct arbitration under Section 4, (3) declining to appoint a substitute arbitrator under Section 5, and (4) determining the arbitrability of the underlying claims and/or the arbitration agreement's enforceability.

The district court lumped all three Wyndham-related defendants together, holding that their noncompliance with AAA policies precluded them from invoking the FAA's procedural protections. But we conclude that the court painted with too broad a brush. Although common sense suggests that the AAA would reject Diaz's and Clark's claims against Development and WorldMark on the same grounds that it rejected Bedgood's, Brandon's, and Heil-Brandon's claims against Resorts, there is no solid evidence to that effect. Accordingly, we vacate the district court's order regarding Development and WorldMark and remand for proceedings, regarding those two defendants, consistent with this opinion.

**1**

For reasons already explained, the AAA had the authority to determine whether Development and WorldMark were out of compliance with its policies, and the district court was entitled to rely on that determination to conclude that those entities were "in

default" within the meaning of Section 3 of the FAA. *See supra* at 11–18. As it pertains to Development and WorldMark, though, we conclude that the district court's determination to that effect lacks a sufficient foundation, at least on the current record.

To determine whether a party has defaulted for Section 3 purposes, a court must "decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002) (internal quotation marks omitted). Diaz and Clark are the only two plaintiffs who have a contract with Development and WorldMark. Neither of them sought to arbitrate before filing suit in federal court. The district court inferred that the AAA would likely reject Diaz's and Clark's arbitration petition because it had declined to administer "any other claims between [Resorts] and its consumers at this time." Invoking futility, the district court held that Diaz and Clark could proceed straight to litigation.

The problem, we think, is that on this record, it's not clear that Development and WorldMark have acted inconsistently with the arbitration right. The AAA rejected present and future claims only against Resorts. It said nothing about claims against Development and WorldMark. And that difference matters. To be sure, Resorts, Development, and WorldMark use similar arbitration clauses, but they aren't identical. And to be sure, the companies are affiliated with one another, but they maintain separate corporate identities. Accordingly, there is no definitive indication in the record that the AAA actually determined that Development and

WorldMark had violated AAA policies as relevant to these plaintiffs. Although it's tempting to assume, as the district court seemed to, that the AAA would reject Diaz's and Clark's petition against Development and WorldMark, there is no evidentiary basis—in the form, say, of an actual rejection letter—to conclude that those two entities are in default as to Diaz and Clark. In contrast to Resorts' failure to investigate or remedy its noncompliance after the AAA's rejection, Development's and WorldMark's actions have thus far apparently evinced a willingness to arbitrate.

Given the Supreme Court's emphasis on the liberal enforcement of arbitration agreements, *see, e.g.*, *Mitsubishi Motors*, 473 U.S. at 626 ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."), we conclude that the district court erred in denying Development and WorldMark's motion to stay litigation under Section 3 on the present record.

**2**

For similar reasons, we hold that Development and WorldMark are "part[ies] aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under Section 4 of the FAA. 9 U.S.C. § 4. As we've explained, to obtain relief under Section 4, a movant must show (1) that the party resisting arbitration must have "fail[ed], neglect[ed], or refus[ed]" to arbitrate and (2) that the movant was "aggrieved" by that failure, neglect, or refusal. Neither Diaz nor Clark attempted to arbitrate in accordance with their contracts, so the first condition is clearly satisfied. And because there's

no hard evidence in this record that the AAA would refuse to consider Diaz's and Clark's claims against Development and WorldMark, those entities can be said to be aggrieved by Diaz's and Clark's failure to arbitrate, thus satisfying the second condition.

Accordingly, on the current record, we conclude that the district court erred in denying Development and WorldMark's motion to compel arbitration under Section 4.[9]

### 3

Perhaps anticipating the AAA's possible rejection, Development and WorldMark next argue that the district court erred in refusing to appoint a substitute arbitrator per Section 5 of the FAA.

---

[9] Even after supplemental briefing, it remains unclear to us exactly how Resorts, Development, and WorldMark relate to one another—and, in particular, whether Development falls, as we think Resorts plainly does, under the "Wyndham Destinations" umbrella. On the one hand, Development and Resorts are separate legal entities, and neither Diaz nor Clark has sought to arbitrate his or her claims, respectively, against Development in the AAA. On the other hand, the Brandons' AAA rejection letter "declined to administer this claim and any other claims between *Wyndham Destinations* and its consumers." "Wyndham Destinations" is the "general trade name for Travel + Leisure Co's timeshare business," Travel + Leisure Co. is Development's parent company, and Development's and Resorts' arbitration clauses are nearly identical. Based on our read of the parties' supplemental briefing, it appears to us that Development might be properly looped in with Resorts by way of the AAA's rejection letter regarding "Wyndham Destinations," but we have no firm record evidence to that effect. Accordingly, we will remand to the district court for proceedings consistent with this opinion, in part to clear up Development's relationship to Resorts and Wyndham Destinations and determine how that relationship might affect Development's ability to avail itself of Sections 3 and 4 of the FAA.

22-11504               Opinion of the Court                    29

As already explained, we conclude that we lack appellate jurisdiction to consider this issue. *See supra* at 21–23.

**4**

Finally, Development and WorldMark's argument that the district court erroneously determined the arbitrability of Diaz's and Clark's underlying claims and the enforceability of the contract—rather than, they say, leaving that issue to an arbitrator—fails for the same reason that Resorts' identical argument did: The district court never decided the arbitrability question; rather, it rejected Development and WorldMark's motion on threshold procedural grounds. *See supra* at 23–24. We needn't say anything more.

**III**

Given the FAA's text, we cannot say that the district court erred in concluding that Resorts' refusal to comply with the AAA's generally applicable policies disqualified it from seeking a stay of litigation or an order directing the parties to arbitration. But the court's decision swept too broadly. Absent rejection letters (or other record evidence) directed to Development and WorldMark of the sort we have for Resorts, or a demonstrated evidentiary connection between the defendants, we cannot currently discern—at least on the record as it exists before us—a sufficient basis for refusing similar relief to those entities.

Therefore, as to plaintiffs Bedgood, Brandon, Heil-Brandon, Mathews, Smith, and Harper, all of whom had contract with Resorts, we **AFFIRM**. With respect to plaintiffs Diaz and Clark, who

had contracts with Development and WorldMark, we **VACATE AND REMAND** for proceedings consistent with this opinion.

  **AFFIRMED IN PART, VACATED AND REMANDED IN PART.**