[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10019

_____

MERRITT ISLAND WOODWERX, LLC,
individually and on behalf of all others similarly situated,
TRUE TOUCH SERVICES, LLC,
individually and on behalf of all others similarly situated,

Plaintiffs-Appellees,

*versus*

SPACE COAST CREDIT UNION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:23-cv-01066-PGB-DCI

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Space Coast Credit Union brings this interlocutory appeal of the district court's denial of its motion to compel arbitration. After the district court's decision, we decided *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355 (11th Cir. 2023)—a very similar case that resolves this appeal. The question in *Bedgood* was "whether, having seemingly stymied the purchasers' efforts to arbitrate, [a company] and its co-defendants can now prevent them from litigating on the ground that their agreements require arbitration." *Id.* at 1359. We held that both the consumers who had "originally sought to arbitrate their claims against [the company], only to see their petitions rejected on account of [the company's] noncompliance with [American Arbitration Association ("AAA")] policies," as well as the consumers "who never formally submitted their claims against [the company] to the AAA, but whose agreements with [that company] contained identical arbitration provisions," "may proceed to litigation." *Id.* Space Coast raises four issues on appeal that largely map onto those raised in *Bedgood*. On each issue, Space Coast's arguments fail. Under the facts here, this case may proceed to litigation. Therefore, we affirm the district court's denial of the motion to compel arbitration.

## I.

The plaintiffs allege that they agreed to a Master Services Agreement ("MSA") when they opened checking accounts with Space Coast.  The plaintiffs dispute that they should have to pay various fees that Space Coast charged them because of the text of the MSA.  Importantly, the MSA has a mandatory arbitration clause, which selected the American Arbitration Association and its rules as those to govern the arbitration.  The arbitration clause also had a provision that stated that "[i]f [the] AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims."

A business intending the AAA to administer consumer arbitrations must notify the AAA, submit its arbitration provisions for an administrative compliance review, and pay an associated fee. *See Rule 12*, Amer. Arb. Ass'n Consumer Arb. Rules (Jan. 2016) (last visited May 6, 2025), https://adr.org/sites/default/files/Consumer%20Rules.pdf [https://perma.cc/58Z9-K356].  If the AAA finds that the provision substantially complies with its due process safeguards, the AAA may agree to administer arbitrations under the clause and include the provision in its public database. *See id.*

On March 27, 2023, Merritt Island Woodwerx, LLC filed an arbitration demand with the AAA related to Space Coast's fees.  On April 20, 2023, the AAA responded in a letter to Space Coast and Woodwerx that it was declining "to administer this claim and any other claims between Space Coast Credit Union and its consumers

at this time" because Space Coast had not submitted its consumer dispute resolution plan for review or paid the fee. The letter noted that Consumer Rule 1(d) provides that "either party may choose to submit its dispute to the appropriate court for resolution, should the AAA decline to administer an arbitration." And the letter also said that "if Space Coast Credit Union wishes for the AAA to consider accepting consumer disputes going forward, Space Coast Credit Union must, at a minimum, register its clause on the Consumer Clause Registry on [the AAA's] website[.]" On April 25, 2023, several days after receiving the letter, Space Coast emailed the AAA expressing its desire to arbitrate and asking the specific reasons for the AAA's declination.

On June 7, 2023, Woodwerx and True Touch Services, LLC filed this putative class action against Space Coast alleging the same improper fees. Two days later, Space Coast filed its arbitration agreement with the AAA for review and paid the AAA's fee. And on July 24, the AAA approved Space Coast's provision and said it was prepared to administer consumer-related disputes.

Space Coast then moved to compel arbitration. The district court ruled against Space Coast, concluding that Space Coast had failed to perform its contractual obligations under the arbitration agreement. Specifically, the district court explained that Space Coast had failed to take the steps necessary for the AAA arbitration until over a month after the AAA had declined Woodwerx's arbitration demand. By delaying, the district court concluded, Space Coast waived its contractual right to arbitrate.

Four days after the district court entered its order denying Space Coast's motion to compel, we announced our decision in *Bedgood*, a factually similar case that was appealed from the same district court in the same procedural posture. 88 F.4th at 1359. In *Bedgood*, several timeshare owners entered into purchase agreements with a hotel company and its affiliates. *Id.* After a dispute arose, the purchasers filed petitions to arbitrate before the AAA as their purchase agreements with the company required, but the AAA dismissed the petitions because the company had failed to comply with the AAA's policies. *Id.* So, the purchasers sued in federal court, and the company moved to compel arbitration under the Federal Arbitration Act ("FAA"), seeking a stay under Section 3 and asking the district court to order the parties to arbitration under Section 4. *Id.* Notably, even after it was sued and moved to compel, the company never tried to rectify its noncompliance. *Id.* at 1361, 1366–67. We held "that [the company's] failure to comply with the rules of its chosen arbitral forum renders the remedies specified in Sections 3 and 4 of the FAA unavailable to it and, accordingly, that the plaintiffs who have contracts with [the company] . . . may proceed to litigation." *Id.* at 1362–63.

Ten days after we decided *Bedgood*, Space Coast brought this interlocutory appeal under 9 U.S.C. section 16(a)(1).

## II.

We review *de novo* the denial of a motion to compel arbitration but review for clear error any factual findings involved. *See Bedgood*, 88 F.4th at 1362 n.4.

### III.

According to Space Coast, the district court erred in four ways. First, Space Coast argues the arbitration provision contractually obligated the plaintiffs to arbitrate and barred them from suing in federal court notwithstanding the AAA's declination. Second, as to Woodwerx, Space Coast argues the district court incorrectly determined that Space Coast was "in default" on its arbitration rights and therefore not entitled to a stay under Section 3 of the FAA. Third, as to True Touch, Space Coast argues the district court incorrectly determined that True Touch's perceived futility excused it from needing to attempt arbitration before suing given that Woodwerx had already tried unsuccessfully to arbitrate. Finally, Space Coast argues the district court erred in concluding that neither plaintiff was entitled to an affirmative order directing arbitration under Section 4 of the FAA. As explained below, we disagree on all counts and find no error by the district court.

*A.  Were the parties contractually obligated to arbitrate?*

First, Space Coast argues that Woodwerx and True Touch have a contractual obligation to arbitrate based on the arbitration provision's substitute-forum clause, even though the AAA denied Woodwerx's arbitration demand. If Space Coast's attack on the district court's order based on the plaintiffs' alleged failure to abide by the substitute-forum clause were a challenge to the district court's refusal to appoint a substitute arbitrator under Section 5 of the FAA, we would lack jurisdiction over such a challenge at this

stage of the litigation. *See Bedgood*, 88 F.4th at 1367 ("Because the statute specifically authorizes interlocutory appeals of Section 3 and Section 4 orders but doesn't mention Section 5 orders, we conclude that we lack jurisdiction over the district court's substitute-arbitrator decision."). But because Space Coast focuses its argument on the plaintiffs' duties under the substitute forum clause, we construe Space Coast's challenge to be that this litigation should be stayed, and the plaintiffs should be required to arbitrate under the substitute-forum clause.

Under the substitute-forum clause, however, a court is a forum. Space Coast's argument that the clause must be interpreted to require an *arbitration forum* fails under review of its plain text, which states that "[i]f [the] AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims." The substitute forum clause may be under a heading titled "Selection of Arbitrator," but that refers to the earlier lines in that paragraph about selecting the individual to run the arbitration. The key substitute-forum sentence isn't connected to picking an individual arbitrator. That is, it isn't connected to "[s]election of [an] [a]rbitrator." This clause is instead about the forum in which claims can be brought under a particular circumstance. The heading doesn't limit the clause's scope when its text is clear, saying "forum for the resolution of the Claims" broadly. *See Forum,* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining forum as a "[a] court or other judicial body; a place of jurisdiction"). Thus, contrary to Space

Coast's argument, the plaintiffs didn't violate the contract on its face.

Finally, it's worth mentioning that Space Coast's first challenge is also an attack on the district court's general understanding of Sections 3 and 4 of the FAA: Space Coast maintains that the district court failed to read as an integrated whole the arbitration provision, which included an all-caps boiler-plate promise to arbitrate, the substitute-forum clause discussed above, and a conflicts clause stating that "[i]n the event of a conflict between the Rules and this Arbitration Agreement, this Arbitration Agreement shall supersede the conflicting Rules only to the extent of the inconsistency." According to Space Coast, the district court erred when it determined that Consumer Rule 1(d) was incorporated into the MSA and thus allowed the plaintiffs to sue in federal court, thereby rendering Sections 3 and 4 of the FAA inapplicable. Instead, argues Space Coast, the arbitration provision's all-caps promise to arbitrate, the conflicts clause, and the substitute-forum clause were "squarely on point," such that as soon as Woodwerx tried to arbitrate, the MSA required all parties to resolve the dispute in an arbitral forum and forever extinguished each party's right to go to court on the plaintiffs' claims.

In other words, Space Coast's first challenge is linked to its remaining challenges to the district court's determinations that it lacked authority to grant Space Coast relief under Sections 3 and 4 of the FAA. To the extent Space Coast's broader attack on the district court's understanding of Sections 3 and 4 implicates Space

24-10019              Opinion of the Court                9

Coast's three remaining challenges, we address those implications below.  And as we will explain, because Space Coast's next three challenges fail under *Bedgood*, its first challenge also fails to whatever extent it attacks the district court's reading of the FAA more broadly.  That leads to the remaining challenges.

### B. Was Space Coast in default as to Woodwerx?

Space Coast next challenges the district court's determination that it was "in default" as to Woodwerx on its right to arbitrate under Section 3 of the FAA by failing to pre-register its arbitration clause with the AAA.  9 U.S.C. § 3.  It argues that the right to expedited review under Consumer Rule 12 means it wasn't "in default." "To determine whether a party has defaulted for Section 3 purposes, a court must 'decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.'" *Bedgood*, 88 F.4th at 1369 (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002), *abrogated in part on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)).[1]

---

[1] Space Coast also incorrectly argues "default" under § 3 is coterminous with "waiver."  While waiver and default are related doctrines, "[t]o determine whether a party has defaulted for Section 3 purposes, a court must 'decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.'" *Bedgood*, 88 F.4th at 1369 (quoting *Ivax Corp.*, 286 F.3d at 1315–16).  That is a distinct question from whether a party has *intentionally* waived its right.  *See Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) ("[W]aiver

In *Bedgood*, "we h[e]ld that the AAA was empowered to conclude that [the company's] arbitration clause violated its policies, and that the district court didn't err in relying on the AAA's determination to conclude that [the company] was 'in default' within the meaning of Section 3." *Id.* at 1363. Just as in *Bedgood*, we cannot say that the district court erred in determining that Space Coast was in default under Section 3 by relying on the AAA's decision that it was refusing to arbitrate because of Space Coast's failure to comply with the AAA's policies.

The AAA stated that it wouldn't "administer [Woodwerx's] claim and any other claims between Space Coast Credit Union and its consumers at this time" because of Space Coast's procedural failure. While *Bedgood* noted that it was especially true that the company there was in default because it hadn't made an "effort to investigate—let alone remedy—its noncompliance before the AAA[,]" *Bedgood* didn't restrict default to such circumstances. *Id.* at 1366. And in any case, at the time the plaintiffs sued here, Space Coast had not yet attempted to remedy its noncompliance with the AAA. Space Coast was therefore in default under Section 3 of the FAA because it acted inconsistently with its arbitration right by not trying to remedy the barrier to arbitration that it had caused.

is the intentional relinquishment or abandonment of a known right." (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

### C.  Was Space Coast in default as to True Touch?

Third, Space Coast argues that True Touch's perceived "futility" doesn't excuse it from compliance with its obligation to arbitrate under the agreement.[2]  That is, Space Coast argues that True Touch cannot establish a default under Section 3 of the FAA because it never requested arbitration.  Because the arguments above apply with equal force to True Touch, True Touch may litigate in court—as far as Section 3 of the FAA is concerned—unless Space Coast is correct that the futility argument fails and alters the above analysis.  Unfortunately for Space Coast, we decided this issue in *Bedgood* too.  True Touch had an identical arbitration provision to Woodwerx, so under *Bedgood*, it doesn't matter that True Touch didn't formally request to arbitrate before filing suit. 88 F.4th at 1359.  *Bedgood* considered the futility argument as part of its discussion of Section 3 of the FAA and made the futility determination a fact-based inquiry.  *See id.* at 1369.  Here, True Touch had an identical arbitration provision to the one the AAA refused to administer.  By possessing the identical rejected agreement, True Touch had a sufficient "evidentiary basis" in the form "of an actual rejection letter" to support a valid futility argument.  *Id.*

---

[2] Space Coast lists this issue as its fourth issue on appeal; but because *Bedgood* most completely discussed "futility" in the context of analyzing Section 3 of the FAA, we choose to address it here as a follow-on issue to the previous subsection.  *See* 88 F.4th at 1369–70.  We need not address "futility" with respect to Section 4 of the FAA.

In sum, just as in *Bedgood*, True Touch's failure to request arbitration doesn't matter given the evidence of futility in the form of the AAA's declination letter to Woodwerx. *Id.* Thus, Space Coast's argument about Section 3 of the FAA fails with respect to True Touch too.

### D. Was Space Coast entitled to an order directing arbitration?

Fourth, Space Coast challenges the district court's decision that Space Coast wasn't entitled to an affirmative order under Section 4 of the FAA compelling arbitration. "Section 4 prescribes two conditions to relief." *Id.* at 1366. "They are separate, but they are causally related: first, the party resisting arbitration must have failed, neglected, or refused to arbitrate; and second, the party seeking to direct arbitration must have been aggrieved by that failure, neglect, or refusal." *Id.* (cleaned up); *see also* 9 U.S.C. § 4. Under *Bedgood*, Space Coast's argument with respect to Woodwerx fails on the first condition. Because Woodwerx "attempted to arbitrate, there was no 'failure, neglect, or refusal' by which [Space Coast] could have been 'aggrieved.'" *Bedgood*, 88 F.4th at 1366 (quoting 9 U.S.C. § 4).

On the other hand, True Touch failed to request arbitration, so Space Coast can meet the first condition for Section 4 relief. *See id.* at 1367. But as in *Bedgood*, Space Coast fails to meet the second, causal condition because "[t]o the extent that [Space Coast] is aggrieved, it was aggrieved either by its own failure to bring its arbitration clause into compliance with AAA policies [by filing it and paying the fee] or, at the very least, by the AAA's decision to that

effect, not . . . [True Touch's] conduct." *Id.* Space Coast's own actions led the AAA to say that it wasn't going to arbitrate any of Space Coast's consumers' claims at that time, so it cannot now claim to be aggrieved because of True Touch's actions.

Resisting this conclusion, Space Coast points to our statement in *Bedgood* that "[w]ithout any indication that [the company] has brought or intends to bring its arbitration agreements into line with the AAA policies, it can't claim to have been 'aggrieved' by the [plaintiffs'] failure or refusal to arbitrate." *Id.* at 1367. As Space Coast sees it, in *Bedgood*, the company's "failure to act and inability to cure the problems preventing the parties from arbitrating were sine qua non" to our holding that the company had not been aggrieved by the plaintiffs who hadn't formally sought to arbitrate. And because Space Coast did come into compliance with the AAA's policies before moving to compel, the argument goes, *Bedgood* isn't controlling.

Space Coast's efforts to distinguish *Bedgood* are unconvincing. *Bedgood*'s key holdings are not limited by the type of procedural failure on the part of the party now pressing for arbitration; the key is that the failure resulted in a refusal by the AAA to arbitrate and that Space Coast's actions were inconsistent with asserting its arbitration right at any time before the suit. It is true that we stated that the company in *Bedgood* had not brought and didn't intend to bring its arbitration agreements in line with the AAA policies, whereas here, Space Coast did later comply with the AAA's policies and pay the fee. But Space Coast's potentially curative

conduct occurred during the course of the litigation. Conduct during the litigation cannot cure Space Coast's previous noncompliance with the AAA policies. In stating in *Bedgood* that the company failed to comply because it had never attempted to cure the issue preventing the AAA arbitration, we never endorsed the converse: that if the company had said the day before our opinion came out that it now wanted to cure the arbitration issue, we would force the parties to arbitrate. Our reference to the company's continued noncompliance with the AAA procedures simply reinforced the paucity of the company's argument in that case.

Put simply, post-filing conduct cannot cure the prior noncompliance. Any rule to the contrary would result in gamesmanship by companies attempting to remedy an arbitration roadblock that they knowingly caused were they to draw a judge they didn't like or wanted to waste counterparty resources spent on litigation. This is especially true in the arbitration context, where the parties "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Given that the intended benefits of arbitration are "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes[,]" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010), the rule Space Coast asks us to adopt would frustrate arbitration's purpose in the first place, *see Preston v. Ferrer*, 552 U.S. 346, 357 (2008) ("A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" (quoting *Mitsubishi*

24-10019                Opinion of the Court                15

*Motors*, 473 U.S. at 633)); *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 932 (11th Cir. 1990) (purpose of arbitration is to "effectuate . . . speedy resolution of disputes"); *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) ("The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings."); *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967) (same); *Loc. Union No. 251, Int'l Brotherhood of Teamsters v. Narragansett Improvement Co.*, 503 F.2d 309, 312 (1st Cir. 1974) (same). As the district court concluded, by ignoring the AAA's letter for a month and a half until after a lawsuit was filed against it, Space Coast acted inconsistently with the intention to vindicate its contractual arbitration rights; the fact that it later attempted to comply with the AAA policies doesn't resurrect the waived contractual right to arbitrate. *See Thomas N. Carlton Est., Inc. v. Keller*, 52 So. 2d 131, 133 (Fla. 1951) ("When a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it.").

Therefore, the plaintiffs here were within their rights under *Bedgood* to proceed to—and remain in—litigation. While we said *Bedgood* was an "odd case," our dicta doesn't mean that *Bedgood*'s legal rules are circumscribed to the exact facts therein. The facts are sufficiently similar here, and so *Bedgood* resolves the issues raised on appeal.

## IV.

Accordingly, we **AFFIRM** the district court's denial of Space Coast's motion to compel arbitration.